UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSAM FANDAKLY,

        Plaintiff,                           Case Number 17-11256

v.                                           Honorable David M. Lawson

THUNDER TECHNOLOGIES, LLC,
and MARK KALINOWSKI,

        Defendants.
_____/

**CORRECTED OPINION AND ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, DENYING MOTION TO STRIKE RESPONSE,
AND DISMISSING COMPLAINT WITH PREJUDICE**

The Court issues this corrected opinion *nunc pro tunc* to correct certain non-substantive errors in the original.

Plaintiff Husam Fandakly filed a complaint in this Court on April 21, 2017 alleging that his employer, Thunder Technologies, LLC, and his supervisor, Marc Kalinowski, discriminated against him based on national origin in violation of 42 U.S.C. § 1981 and Michigan law. His theory was that he was constructively discharged because of a hostile work environment. Fandakly was represented by an attorney at the time. His attorney was allowed to withdraw from the case on August 21, 2017. Since that time, Fandakly has chosen to represent himself. On November 8, 2017, the defendants filed a motion for summary judgment. Fandakly did not respond to the motion within the time allowed. He did, however, file documents several months later, which are characterized on the docket as a response to the motion. However, those documents consist only of miscellaneous records, memoranda, and what appear to be transcriptions of recorded telephone conversations. They were not accompanied by any verifications, declarations, or legal arguments.

The defendants moved to strike the response. The Court scheduled a hearing on both motions for April 18, 2018. The plaintiff appeared in court on his own behalf and responded to the defendants' argument. He had no good explanation for his failure to follow the filing rules or the rules of procedure concerning summary judgment motions and responses. And he acknowledged that he had no verifications or statements under oath that could support the admissibility of any of the documents he filed.

The plaintiff's filings are not directly responsive to the defendants' motion for summary judgment. On the other hand, the filings are not impertinent or scandalous so as to subject them to being struck under Federal Rule of Civil Procedure 12(f). The Court therefore will deny the motion to strike them, and they may remain in the record for whatever value they might have going forward.

Those documents, however, do not establish a question of material fact, or rebut the defendants' assertions made in their motion for summary judgment. Because the record demonstrates that the defendants are entitled to a judgment as a matter of law, the Court will grant their motion and dismiss the case.

I.

There has been very little formal discovery conducted in this case. However, the defendants have supported their summary judgment with affidavits and business records.

The plaintiff alleged in the complaint that the defendants directed ethnic slurs toward him based on his middle eastern heritage, and that the defendant's son, Andrew Kalinowski, showed him a video of a person having sex with a goat. None of this is supported in the record with testimony, affidavits, or declarations.

On the other hand, the defendants submitted an affidavit by Marc Kalinowski, the owner of Thunder Technologies, LLC. Kalinowski attested that he hired plaintiff Husam Fandakly to work at his manufacturing plant in Rochester Hills, Michigan around November 10, 2014. The plaintiff's job duties included stocking, inventory, shipping, receiving, fabrication, painting, cleaning (various areas of the plant, as well as bathrooms and company cars), and other similar tasks.

Around three weeks after he was hired, the plaintiff confessed that he had misrepresented his criminal history when he applied for the job; he did not report that he had served a prison sentence for a felony conviction for selling marijuana, although the employment application the plaintiff submitted tends to negate that assertion. Kalinowski felt that "everyone deserved a second chance," and he decided to keep the plaintiff on despite his concerns about the deception.

Kalinowski attested that the plaintiff "told inappropriate stories and used inappropriate language at the office," and that Kalinowski overheard the plaintiff use words such as "f***," "b***h," and "n****r." The plaintiff also "often listened to loud rap music in the workshop that cursed [sic] as much as he did, rapping about themes inappropriate for work." The plaintiff also "referred to himself using ethnic titles that would have been slurs from anyone else, such as 'Arabian Prince' and 'Arabian Knight.'"

The plaintiff's racist, sexist, and otherwise offensive and inappropriate antics at work included incidents when he (1) told "midget jokes" and "pantomim[ed] midgets in sexual situations"; (2) "punched" large rolls of rubber material stored in the warehouse and "call[ed] them 'n****rs'"; (3) told stories about "staking out" individuals at his previous places of employment, intending to "beat them up"; (4) bragged that a cousin of his "stabbed and gutted" a neighbor who had threatened the plaintiff's family; (5) boasted that he was one of the "top drug dealers in Detroit"

-3-

and that he had "buried a million dollars in his back yard before he went to prison for dealing marijuana"; (6) told a story about flooding a business that he previously was involved with in order to collect $88,000 in insurance proceeds; (7) "offered to burn down [Thunder Technologies] during a particularly poor month where [Kalinowski] was losing money, so that he could collect insurance money"; and (8) often bragged about the size of his genitalia.

Kalinowski reprimanded the plaintiff several times for his inappropriate and offensive language and conduct, and he attested that the plaintiff was the only employee he ever had who needed to be repeatedly reprimanded for those sorts of problems. The defendant's office manager also repeatedly reprimanded the plaintiff for his behavior. However, Kalinowski chose not to fire the plaintiff because "his job performance was generally good." In fact, Kalinowski gave the plaintiff regular raises, making him the highest paid hourly worker in the small, ten-person company.

The defendants also note that Fandakly was given a substantial loan by the company when he faced eviction proceedings. He was invited to and attended the wedding of the owner's daughter. And during his nineteen-month tenure, he attended at least one Superbowl party at the Kalinowski home.

Kalinowski attested that he had another employee of Arab ethnicity at Thunder Technologies, Mark Sobodos, who was employed from 2015 to 2017, and that when Sobodos left to take another job, he "left a glowing letter of resignation" stating that he was well treated and had enjoyed his time working for Kalinowski.

On June 22, 2016, Kalinowski received a phone call from his office manager reporting that the plaintiff was not at work and had left a note on her desk stating that he would be off work for two weeks for medical reasons. The letter did not include any details of the plaintiff's medical

situation, so Kalinowski called the plaintiff to inquire. Kalinowski attested that the plaintiff was "irrationally livid, claiming that [Kalinowski] did not trust him and that [Kalinowski] would hear from his lawyer for discrimination." Kalinowski assumed from the plaintiff's "tone, insubordination, and threats" during the phone call that the exchange was "effectively [his] resignation."

Later, after the plaintiff had quit, he came to the workplace to pick up his tools, and was again "irrationally angry with [Kalinowski], yelling at [him] in [the] parking lot." The plaintiff "again accused [Kalinowski] of discriminating against him, [stating that Kalinowski's son Andrew] had called him a 'n****r' or 'sand n****r' several weeks [before]." Kalinowski was taken aback because "in [his] mind the issue was why are you taking two weeks off work," which the plaintiff had refused to discuss. Kalinowski also stated that the plaintiff did not offer to return to work if the supposed discrimination against him was resolved.

Kalinowski concluded by stating that he "never discriminated against [the plaintiff] for any racial or ethnic reasons [sic]," and that "[t]o [his] knowledge, no one [else at Thunder Technologies] ever discriminated against [the plaintiff]." Kalinowski also attested that his company has policies barring discrimination, and that any such complaints would have been dealt with if brought to his attention. Kalinowski stated that, in his view, the plaintiff "is simply a disgruntled ex-employee that is suing [him] for financial gain."

As noted above, the plaintiff has not submitted a declaration or statement under oath that rebuts Kalinowski's affidavit. He did submit other evidence, however, consisting of a decision by a state administrative law judge (ALJ) on the plaintiff's application for unemployment benefits. The issue presented at that hearing appears to have been whether the plaintiff's voluntary departure from

his employment at Thunder Technologies was with good cause attributable to the employer. The plaintiff took the position that he left work because his employer discriminated against him because he was an Arab American. The ALJ found the plaintiff not credible, and he concluded that the plaintiff had not quit his job for good cause attributable to Thunder Technologies.

The substance of the plaintiff's argument at the motion hearing was that the Kalinowskis' affidavits were false. However, he did not submit any sworn testimony to contradict them.

On April 21, 2017, the plaintiff filed his three-count complaint raising claims for (1) race or national origin discrimination under 42 U.S.C. § 1981 (Count I); (2) the same contrary to Michigan's Elliott-Larsen Civil Rights Act (ELCRA) (Count II); and (3) retaliatory discipline and discharge in response to complaints of discrimination under ELCRA (Count III).

The defendants argue in their motion for summary judgment that (1) the plaintiff's claims of national origin discrimination under 42 U.S.C. § 1981 and ELCRA require that he establish materially identical elements in order to proceed, and he has not made out a viable *prima facie* case under either statute; (2) the plaintiff did not suffer any adverse employment action because he chose voluntarily to resign, and he never was fired; (3) he was not treated differently than any similarly situated employee who engaged in the same problematic behaviors, which included concealing his criminal history when he applied for the job and repeatedly making racially and sexually offensive comments and circulating inappropriate emails; (4) in fact the plaintiff was treated more favorably than other employees, because, among other things, he was the highest paid hourly employee during his tenure, and he was paid more than another hourly employee who also was of Arab ethnicity; (5) in any event, a single allegedly offensive remark made to the plaintiff by a co-worker cannot suffice to establish either that the plaintiff was subject to discrimination or that his work environment was

so pervasively oppressive that a reasonable person would feel compelled to resign; and (6) the plaintiff cannot show a causal connection between any protected activity and his voluntary resignation, because the only time he alleges that he complained to his supervisor about discrimination in the workplace was during a phone call with the defendant's owner after the plaintiff resigned.

II.

The defendants have moved for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

A.

"'The elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and [42 U.S.C. § 1981].'" *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000)). A plaintiff alleging that he was subjected to a hostile work environment based on ethnicity in violation of Title VII must offer evidence showing

that "(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment and (5) defendant knew or should have known about the harassment and failed to take action." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078-79 (6th Cir. 1999). Under Michigan's ELCRA, the elements are substantially the same. *See Quinto v. Cross & Peters Co.*, 451 Mich. 358, 368-69, 547 N.W.2d 314, 319-20 (1996).

To be actionable, the harassment must be severe or pervasive in two aspects. "Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). These tests are intended to distinguish between "simple teasing, offhand comments, and isolated incidents," which are not actionable, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and a "workplace [that] is permeated with 'discriminatory intimidation, ridicule, and insult,'" which is actionable, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The plaintiff has failed to carry his burden of opposing the motion, because he has not proffered evidence to support any of his allegations of discrimination. "Rule 56(c) requires a party objecting to a motion for summary judgment to support its assertions by 'citing . . . particular parts of materials in the record.'" *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014). The defendants have offered sworn testimony that they did not countenance derogatory ethnic language and crude sexual references in the workplace. In fact, it appears that the worst offender was the plaintiff himself. But even if the Court credited the plaintiff's complaint about a remark made by the defendant's son, Andrew Kalinowski, that shows no more than the isolated incidents that courts

-9-

routinely have found to be not actionable. *See, e.g.*, *Williams v. CSX Transp. Co.*, 643 F.3d 502, 513 (6th Cir. 2011) (finding no hostile work environment where the defendant "call[ed] Jesse Jackson and Al Sharpton 'monkeys' and [said] that black people should 'go back to where [they] came from'" among other offensive and racist comments); *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432 (6th Cir. 2014) (holding that no hostile work environment existed where the plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 700, 707-08 (6th Cir. 2007) (concluding that fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII as a hostile environment).

Courts assessing hostile work environment claims must "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citation omitted). The hostility, according to the Court, must be "pervasive"; "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Stray remarks and occasional offensive comments will not establish the required pervasiveness; "[t]o hold otherwise would risk changing Title VII into a code of workplace civility." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008).

Fandakly has fallen far short of meeting his burden of showing that the record contains facts that establish a dispute requiring a trial to resolve. By offering little but a disorganized collection

of miscellaneous documents, he has squandered his "opportunity to assist the court in understanding [his version of] the facts." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). "[I]f the non-moving party fails to discharge [his summary judgment] burden — for example, by remaining silent — its opportunity is waived and its case wagered." *Ibid.* "[T]here is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact,'" and "a court's reliance on the facts advanced by the movant is proper and sufficient." *Id.* at 404 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)). The plaintiff has not submitted any proper evidence of his own, and the record submitted by the defendant positively shows that the defendant and its principals never discriminated against the plaintiff.

B.

The plaintiff also alleged that the defendants retaliated against him, although it is not clear for what. "'[T]he ELCRA analysis [for retaliation claims] is identical to the Title VII analysis.'" *Kuhn v. Washtenaw County*, 709 F.3d 612, 627 (6th Cir. 2013) (quoting *Wasek v. Arrow Energy Services*, Inc., 682 F.3d 463, 472 (6th Cir. 2012)). "In order to establish a *prima facie* case of retaliation, [the plaintiff must] show that (1) he engaged in protected activity, (2) the [defendant] knew that [he] had exercised his civil rights, (3) the [defendant] took an adverse employment action against [the plaintiff], and (4) there was a causal connection between [the plaintiff's] protected activity and the adverse employment action." *Id.* at 627-28 (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).

There is no evidence that the plaintiff engaged in protected activity. The record also establishes that the plaintiff never was subjected to any adverse action, because Kalinowski attested

that the plaintiff voluntarily resigned, despite his offer to address any supposed "discrimination" that had occurred. Kalinowski also attested that the plaintiff never complained to him about discrimination before he resigned, which, as the defendant correctly points out, negates any inference of causation between the supposed protected activity and any possible adverse action (although, again, so far as the record shows there was no adverse action because the plaintiff resigned, and the stray comments alluded to by the plaintiff certainly cannot suffice to establish that he suffered a "hostile environment" or was "constructively discharged.").

### III.

There is no genuine fact issue presented by the record that necessitates a trial. The defendants have demonstrated that they are entitled to a judgment in their favor as a matter of law.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt. #17] is **GRANTED**.

It is further **ORDERED** that the defendants' motion to strike the plaintiff's filings [dkt. #23] is **DENIED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

                              s/David M. Lawson  
                              DAVID M. LAWSON  
                              United States District Judge

Dated: April 26, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 26, 2018.

                    s/Susan Pinkowski  
                    SUSAN PINKOWSKI